ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **SANTIAGO VILLANUEVA HERNÁNDEZ**<br><br>Peticionario<br><br>v.<br><br>**LAURA MALDONADO SANTANA**<br><br>Recurrido | KLCE202401091 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **CAGUAS**<br><br>Civil Núm.:<br>**E CU2016-0140**<br><br>Sobre: Relaciones Filiales |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 7 de marzo de 2025.

Comparece ante nos, el señor Santiago Villanueva Hernández (señor Villanueva Hernández o parte peticionaria) y solicita que revisemos la *Resolución* notificada el 6 de junio de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas. Por virtud del dictamen recurrido, el TPI ordenó al señor Villanueva Hernández pagar lo siguiente: deuda de $1,885.90 reclamada por la señora Laura Maldonado Santana (señora Maldonado Santana o parte recurrida) sobre gastos suplementarios de la menor KEVM, así como el reembolso del 61% del costo del informe social realizado por una psicóloga clínica, específicamente la suma de $1,189.50.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y modificamos el dictamen recurrido.

### I.

Según surge del expediente, el señor Villanueva Hernández y la señora Maldonado Santana son los progenitores de KEVM, nacida el 1 de agosto de 2010. En el 2016, el señor Villanueva Hernández presentó una solicitud de custodia compartida ante el Tribunal de

Primera Instancia.[1] Posteriormente, las partes fueron referidas al Instituto de Terapia Familiar Rita Córdova. Luego de realizados los correspondientes estudios sociales, el 8 de septiembre de 2021, el trabajador social Ramón Rivera Lozada recomendó la custodia compartida de la menor KEVM.

Tras varios trámites procesales respecto a las relaciones filiales y custodia de la menor KEVM, el 3 de enero de 2022, la señora Maldonado Santana presentó una *Urgente Moción en Solicitud de Suspensión de Relaciones Paternofiliales*, por alegadamente haberse suscitado un incidente de agresión física entre el señor Villanueva Hernández y la menor KEVM.[2] Ante la renuencia de la menor a relacionarse con su padre, el TPI suspendió provisionalmente las relaciones filiales por un periodo de 30 días.[3]

De otra parte, el 25 de abril de 2022, la señora Maldonado Santana presentó una *Urgentísima Moción Informativa en Solicitud de Orden y Remedios*, por el alegado incumplimiento del señor Villanueva Hernández en proveer los formularios necesarios para la otorgación de la Beca San Alfonso que recibía la menor KEVM para asistir al Colegio Notre Dame. En consecuencia, el 26 de abril de 2022, el TPI emitió una *Orden* mediante la cual le concedió un término de seis (6) horas laborales al señor Villanueva Hernández para presentar los documentos relacionados a la beca de la menor KEVM. El 2 de mayo de 2022, el señor Villanueva Hernández sometió los documentos ordenados por el foro primario.

El 23 de mayo de 2022, el TPI dictó una *Orden*, en la cual dispuso, con relación al Colegio de la menor KEVM, lo siguiente:

[…]

---

[1] Posteriormente, el señor Villanueva Hernández desistió sin perjuicio de dicha solicitud, lo cual fue aceptado por el TPI en una *Orden* notificada el 13 de julio de 2022. No obstante, el foro de instancia aclaró que, por éste ostentar la patria potestad compartida de la menor, continuaría participando de forma activa en la toma de decisiones respecto a la menor KEVM.

[2] Apéndice del recurso págs. 62-63.

[3] Mediante *Resolución y Orden* dictada el 23 de febrero de 2022. Apéndice de la oposición al recurso, págs. 43-45.

Como medida protectora, se autoriza a la señora Maldonado a tramitar con exclusión al señor Villanueva todos los asuntos relacionados a la matrícula de la menor Kamila Villanueva Maldonado en el Colegio Notre Dame en Caguas. De la menor perder la beca de estudios por causas imputables al señor Villanueva, el tribunal tomará medidas protectoras de orden económico.[4]

El 6 de diciembre de 2022, el TPI refirió el caso para evaluación en la oficina de la Dra. Rowina Rosa Pimentel (Dra. Rosa Pimentel) a los fines de validar o descartar el que la menor KEVM fue sujeto de alienación parental.

Luego de varios asuntos nuevamente vinculados a las relaciones paternofiliales, el 28 de diciembre de 2022, la señora Maldonado Santana notificó mediante *Urgente Moción Informativa Reiterando Solicitud de Inclusión de Gastos Escolares*, que desde el 2017, la menor KEVM disfrutaba de la Beca San Alfonso en el Colegio Notre Dame, y que por la tardanza en la presentación de los documentos del señor Villanueva Hernández, la beca le fue denegada. Además, que al este informar al Colegio que existía una custodia compartida, le requirieron incluir los ingresos del padre, ocasionando que la menor KEVM resultara inelegible para el proceso debido al ingreso elevado del señor Villanueva Hernández. El 13 de enero de 2023, fue notificada una *Orden* en la cual el TPI refirió el expediente a la Examinadora de Pensiones Alimentarias para la inclusión del gasto de educación privada en la pensión alimentaria.

El 6 de febrero de 2023, el señor Villanueva Hernández presentó una *Moción en Cumplimiento de Orden en Torno a Pago de Educación y en Solicitud de Consolidación de Casos*.[5] Notificó que sufragaría el 61% de la mensualidad del Colegio por la cantidad de $188.59 mensuales, adicional a la pensión alimentaria establecida.[6]

---

[4] *Íd.,* pág. 62.
[5] Apéndice de la oposición al recurso, págs.73-75
[6] La psicóloga clínica, Dra. Rosa Pimentel sometió una *Moción Informativa*, en la cual detalló que el 26 de enero de 2023, le fue ordenado a realizar un Informe de Evaluación de Enajenación Parental y que este debía ser presentado en o antes

El 6 de marzo de 2023, la señora Maldonado Santana instó una *Moción Informativa y en Cumplimiento de Orden sobre Pago de Gastos Escolares.* Informó al Tribunal que los gastos de matrícula, uniformes, libros y materiales escolares ascendían a $2,246.20, de los cuales le correspondía al señor Villanueva Hernández cubrir el 61%, para una cantidad de $1,370.18. Además, que éste último también adeudaba la suma de $1,508.31 en concepto del pago de las mensualidades del Colegio de la menor KEVM, así como la cantidad de $1,963.74 en concepto de gastos escolares.

Así las cosas, el 20 de abril de 2023, la señora Maldonado Santana solicitó el reembolso de lo pagado para la preparación del informe pericial de la Dra. Rosa Pimentel, toda vez que ésta concluyó que no se cumplían los criterios de enajenación parental y que la conducta de la menor KEVM de no relacionarse con su padre se debía solo a las propias acciones del señor Villanueva Hernández.[7] Por tanto, requirió al foro *a quo* que le impusiera al señor Villanueva Hernández el pago de la totalidad del informe social, específicamente $3,900.00. Ante ello, adujo que le correspondía el reembolso por parte del padre de su hija KEVM de $1,950.00 que le pagó a la Dra. Rosa Pimentel.

De otro lado, el señor Villanueva Hernández se opuso a lo solicitado por la señora Maldonado Santana en torno a la deuda reclamada y el reembolso. Destacó que no le correspondía asumir los gastos del Colegio, toda vez que no consintió a dicha decisión.[8]

El 16 de mayo de 2023, la Dra. Rosa Pimentel sometió el *Informe Evaluación Psicológica Pericial Enajenación Parental,* el cual fue realizado el 12 de abril de 2023. En el informe, la perito forense

---

del 28 de febrero de 2023. A su vez, informó que la señora Maldonado Santana cumplió con el pago de la primera parte del proceso de evaluación ($812.00), y que luego de varios intentos para que el señor Villanueva Hernández cumpliera con su parte ($812.00), éste emitió el pago el 10 de febrero de 2023. Íd., págs. 78-80.

[7] Apéndice del recurso, págs. 76-77.
[8] Apéndice del recurso, págs. 79-81 y 82-85.

concluyó, entre otras cosas, que el caso no cumplió con los factores para identificar enajenación parental. Sin embargo, resaltó que la resistencia y el rechazo de "la menor hacia la relación con su padre respondía principalmente a su experiencia directa con el padre, la cual le ha provocado miedo y rechazo hacia este".[9]

Tras múltiples incidentes procesales, el 12 de febrero de 2024, se celebró una vista a la cual comparecieron ambas partes, asistidos por sus respectivas representaciones legales. El señor Villanueva Hernández reconoció la deuda de $1,254.40 por concepto de libros, materiales y bulto de la menor. Surgió, además, que previamente éste realizó un pago de $915.52, por lo que aún quedaba un balance de $338.88. Con relación a la controversia de las mensualidades del Colegio de la menor KEVM, la señora Maldonado Santana reclamó en la vista una deuda de $1,885.90, correspondiente a la participación del señor Villanueva Hernández en los gastos suplementarios. Ante la negativa del señor Villanueva Hernández en reconocer que existía de su parte una porción impagada en el gasto de mensualidad de KEVM, el Tribunal ordenó a la institución educativa a la que asistía la menor la certificación de los pagos y la información fue presentada el 1 de marzo de 2024.

Evaluadas las posturas de ambas partes, el 24 de mayo de 2024, notificada el 6 de junio de 2024, el TPI emitió la *Resolución* que hoy revisamos. En esta ordenó al señor Villanueva Hernández realizar los siguientes pagos:

- $1,885.90 en concepto de la deuda de gastos suplementarios de educación privada reclamada por la señora Maldonado Santana;
- El reembolso del 61% de la cantidad de $1,950.00 en concepto de la partida reclamada del informe de la Dra. Rosa Pimentel. Es decir, la cantidad de $1,189.50.
- $800.00 en concepto de honorarios de abogado por el proceso de cobro de los reembolsos de gastos de la menor KEVM.

---

[9] Apéndice del recurso, págs. 86-183.

En desacuerdo con lo resuelto por el TPI, el señor Villanueva Hernández solicitó la reconsideración de la *Resolución*. En síntesis, alegó que desde que tuvo conocimiento del colegio privado en el que la señora Maldonado Santana quería matricular a la menor KEVM, este se opuso rotundamente, toda vez que se trataba de una decisión unilateral en violación a su derecho de patria potestad. Adujo que, en relación a la deuda sobre las mensualidades del Colegio, surgía del expediente que la señora Maldonado Santana no presentó evidencia acreditativa del pago de dichas mensualidades. Además, señaló que, al no consentir a que la menor KEVM fuera matriculada en el Colegio, posición que ha sido reiterada desde el año 2022 cuando la señora Maldonado Santana comenzó a solicitar dicho pago, y que la dilación en el proceso se debió únicamente al incumplimiento de ésta en proveer la evidencia acreditativa de la deuda, procedía que se le eximiera de la deuda del pago del Colegio. En cuanto al pago del informe de la Dra. Rosa Pimentel, expuso que, con anterioridad, cumplió con la porción que le correspondía y que del informe no surgía que era un padre alienante, al contrario de la señora Maldonado Santana, la cual si fue encontrada con indicadores de conductas enajenantes. El 23 de agosto de 2024, notificada el 9 de septiembre de 2024, el foro primario declaró *No Ha Lugar* la solicitud en reconsideración presentada por el señor Villanueva Hernández.

Aun inconforme con la determinación del foro primario, el señor Villanueva Hernández acude ante este Foro y le imputa la comisión de los siguientes errores al TPI:

> Erró el TPI al imponer al recurrente el pago del gasto del colegio de la menor sin que el autorizara que la menor fuera matriculada en dicho colegio en menoscabo a su ejercicio de patria potestad y en clara violación a su derecho fundamental de intimidad y en violación al debido proceso de ley a ser oído.

> Erró el TPI al imponer al [peticionario] la totalidad del pago de informe de la Dra. Rowina Rosa [Pimentel]

cuando no se desprende de dicho infórme que el [peticionario] era un padre alienante.

Por su parte, el 4 de noviembre de 2024, la señora Maldonado Santana presentó su *Oposición a Recurso de Certiorari,* por lo que con el beneficio de la comparecencia de las partes procedemos a continuación.

**II.**

**A.**

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 81(2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Caribbean Orthopedics v. Medshape, et al.,* 207 DPR 994 (2021); *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478 (2019).[10]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión ecuánime. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso

---

[10] El recurso de *certiorari,* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de Procedimiento Civil, supra.

constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 LPRA Ap. XXII-B, R. 40.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte

que las impugne probar lo contrario. *Vargas v. González*, 149 DPR 859, 866 (1999).

**B.**

Sabido es que los casos relacionados con los alimentos de los menores están revestidos del más alto interés público y que en estos el norte es el bienestar del menor. *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 535 (2009); *Argüello v. Argüello*, 155 DPR 62 (2001); *Figueroa Robledo v. Rivera Rosa*, 149 DPR 565, 572 (1999). La Constitución de Puerto Rico[11] establece que la obligación de los progenitores de alimentar a sus hijos menores de edad es parte del derecho a la vida.

En cuanto al concepto de alimentos, las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico*[12] lo definen como:

> "Todo lo indispensable para el sustento, habitación, vestido y asistencia médica del o de la alimentista según el ingreso familiar. Los alimentos comprenden también la **educación e instrucción del o de la alimentista**."

(Énfasis nuestro).

De otro lado, el Código Civil de Puerto Rico[13] decreta los derechos que cobijan a los menores, entre ellos el derecho de alimentos. El Artículo 653 de dicho cuerpo legal también define el término alimentos. Dispone dicho artículo:

> Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.
>
> **Cuando el alimentista es menor de edad, los alimentos comprenden también su educación,** las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y **los gastos extraordinarios para la atención de sus condiciones personales especiales**. 1 LPRA sec. 7531.

(Énfasis nuestro).

---

[11] Art. II, Sec. 7, Const. ELA, LPRA, Tomo I.

[12] Emitidas de conformidad con el Artículo 19 de la *Ley Orgánica de la Administración para el Sustento de Menores*, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, 8 LPRA sec. 501 -529 (a).

[13] Código Civil de Puerto Rico, Ley Núm. 55-2020, según enmendada.

Por su parte, el Art. 558 del Código Civil de Puerto Rico dispone los derechos que tienen los hijos. Estos son: (a) llevar el apellido de cada progenitor; (b) recibir alimentos por parte de ambos progenitores; (c) exigir en su favor la protección que surge de la patria potestad que sus progenitores ejercen sobre él; y (d) participar de la herencia de cada uno de los progenitores. 31 LPRA sec. 7104.

**III.**

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de alimentos, podemos revisar discrecionalmente la decisión recurrida por vía del auto de *certiorari,* al palio de la Regla 52.1 de Procedimiento Civil, *supra.*

En su primer señalamiento de error, la parte peticionaria alega que erró el foro primario al imponerle el pago del gasto del Colegio de la menor KEVM, sin que el autorizara que fuera matriculada, menoscabando así su ejercicio a la patria potestad y violentando su derecho fundamental de intimidad y debido proceso de ley. Específicamente, señala que el asunto medular del caso es el efecto perjudicial que puede tener el que no tenga ninguna injerencia en las decisiones de la vida de su hija KEVM, toda vez que no se atienden sus reclamos, no se considera su posición, ni se le permite ejercer la patria potestad compartida que ostenta. Expone que la parte recurrida solicitó el pago del Colegio cuando le cancelaron la beca a la menor KEVM, pero nunca presentó la evidencia acreditativa del pago de las mensualidades del Colegio. Enfatiza que no se trata de un padre que no paga su obligación alimentaria, por el contrario, que siempre ha pagado puntualmente la pensión fijada y así consta en el expediente del Tribunal. Asimismo, en cuanto a la fijación de honorarios de abogados, suplica a este Foro que se deje sin efecto, al entender que la dilación de los procedimientos se debió únicamente al incumplimiento de la

parte recurrida con la presentación de la prueba de los alegados gastos educativos reclamados. Sobre dicho señalamiento de error, la parte recurrida arguye que este Foro no tiene jurisdicción para atenderlo, por ser una decisión final y firme, emitida desde el 13 de enero de 2023.

Un examen pormenorizado del expediente nos lleva a concluir que el primer error no fue cometido. La parte peticionaria no logró derrotar la deferencia que merece la determinación realizada por el foro primario en relación con la aportación que debe realizar en concepto de la matrícula de la menor KEVM en el Colegio. Es claro que el TPI tomó en consideración los pagos realizados por la parte recurrida, información que fue entregada directamente por la institución educativa. Igualmente, según surge del expediente, la menor KEVM perdió el beneficio de la beca educativa por omisiones de la parte peticionaria, por lo que la madre de la menor KEVM tuvo que matricularla costeando los pagos correspondientes.[14] Más aún, en la *Moción en Cumplimiento de Orden en Torno a Pago de Educación y en Solicitud de Consolidación de Casos*, la parte peticionaria acordó sufragar el gasto del 61% de la mensualidad del Colegio, adicional a la pensión alimentaria establecida a favor de la menor KEVM.

De igual manera, recordemos que nuestro Código Civil dispone, en relación a los alimentos de un menor, que estos comprenden también **su educación**, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social, así como los gastos extraordinarios para la atención de sus condiciones personales especiales.[15] Por lo tanto, no hallamos visos

---

[14] Desde el 2017, la menor KEVM ha cursado sus estudios en el Colegio Católico Notre Dame en Caguas.

[15] Como es sabido, la obligación de alimentar al menor es inherente a la maternidad y a la paternidad, por lo que recae sobre los obligados desde el momento en el que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 718 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012). Esta obligación es personal de cada uno de los excónyuges, por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor una

de irregularidad en cuanto a la apreciación de la prueba realizada en este aspecto por el foro *a quo,* toda vez que fue realizada para asegurar el bienestar de la menor KEVM.

Por otro lado, en su segundo señalamiento de error, la parte peticionaria aduce que el TPI erró al imponerle la totalidad del pago del informe pericial de la Dra. Rosa Pimentel, aun cuando no se desprende del mismo que es un padre alienante. Argumenta que la parte recurrida solicitó al Tribunal que pagara el 100% del informe, haciendo referencia a una *Orden* en la cual se dispuso que "de identificarse que existe alguna alienación parental por alguno de los progenitores, se le impondría el costo de dicho informe."

De otro lado, la parte recurrida aduce que, de la parte peticionaria no haber solicitado el informe sobre enajenación parental, no hubiese tenido que incurrir en dicho gasto, por lo que le es atribuible a éste el costo en su totalidad.

Evaluado el expediente ante nuestra consideración, entendemos que surge documentación presentada por la Dra. Rosa Pimentel ante el TPI en la cual notificó que antes de comenzar las correspondientes evaluaciones de la menor KEVM para el caso, según ordenado por el Tribunal, ambas partes debían proveer su fracción en el costo, ascendientes a $812.00 cada uno. La parte recurrida cumplió con su porción del pago el 2 y 6 de febrero de 2023, mientras que la parte peticionaria emitió el pago el 10 de febrero de 2023.

El informe realizado por la Dra. Rosa Pimentel tuvo un costo total de $3,900.00. La parte recurrida informó que cumplió con el pago del 50% del informe, es decir, $1,950.00 y que la parte peticionaria pagó el 50% restante, $1,950.00. Posteriormente, el 13

---

vez decretado el divorcio. *Pesquera Fuentes v. Colón Molina,* 202 DPR 93, 108 (2019). Lo cual implica, que el deber de alimentar a los hijos menores de edad no depende de que se ostente o no la *patria potestad,* sino que es un deber moral como progenitor.

de abril de 2023, la parte recurrida solicitó el reembolso del 50% que pagó en concepto del informe, toda vez que la parte peticionaria fue la promovente de la evaluación. Sin embargo, no coincidimos con la apreciación de la parte recurrida y entendemos que la determinación del foro primario es errónea. El costo del informe corresponde a ambos padres, en partes iguales, tal y como sucedió en este caso. Aun cuando la parte peticionaria suscitó la realización del informe, concierne que ambos cumplan con el costo de ello, pues el mismo se hizo en beneficio de la menor KEVM y fue ordenado por el Tribunal ante una alegación de enajenación parental por uno de los progenitores. Por tanto, no procede que la parte peticionaria reembolse a la parte recurrida el 61% de los $1,950.00 relacionados al informe pericial. El segundo error fue cometido por el TPI.

## IV.

Por los fundamentos que anteceden, se expide el auto de *certiorari* y procedemos a confirmar y modificar la *Resolución* impugnada. Ello, a los efectos de establecer que les corresponde a ambos progenitores (50% cada uno) el pago del informe pericial realizado por la Dra. Rosa Pimentel. Así modificada, se confirma.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones